# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WARREN M. SHARP            :

                        :

                        :

      v.                    :          Civil No. CCB-12-3734

                        :

                        :

HOUSING AUTHORITY OF BALTIMORE    :

CITY                             :

## MEMORANDUM

Plaintiff Warren M. Sharp filed this action under Title VII of Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*. He alleges that his former employer, the Housing Authority of Baltimore City ("HABC"), racially discriminatorily forced him to resign. HABC has filed a motion to dismiss or, in the alternative, for a more definite statement. For the reasons set forth below, the motion will be denied.

## BACKGROUND[1]

In September 1994, Sharp was hired as a heating mechanic at HABC. (Compl. Exs., ECF No. 1-1, at 5). In 2001, he was promoted to assistant supervisor, and, in 2006, he was promoted to supervisor. (*Id.*). His supervisor was Larry Warner during this entire period. (*Id.*). In 2008, Sharp was promoted to superintendent, the same year that Thomas Palardy was hired at HABC and became Sharp's new supervisor. (*Id.*). Sharp was the first black Plant Operations

---

[1] The court understands HABC's frustration with Sharp's complaint, which is not well-drafted. Nevertheless, Sharp is proceeding *pro se*, so the court must construe his complaint liberally. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (citing *Hemphill v. Melton*, 551 F.2d 589, 590-91 (4th Cir. 1977). Sharp also notes in his complaint that he has dyslexia, a condition that may make drafting legal documents more difficult. Despite the complaint's lack of clarity, however, when it is read in combination with all of the attached exhibits, *see* Fed. R. Civ. P. 10(c), the complaint does convey the scope of Sharp's racial discrimination claim and the events leading up to his forced resignation. The court also recognizes that Sharp's complaint discusses events that are not actionable as they occurred too long ago, but such events may be considered as evidence and context for Sharp's claims.

Superintendent at HABC. (*Id.* at 11).

Sharp's relationship with Palardy apparently was difficult throughout his tenure as a superintendent. Sharp needed help in completing paperwork because of his dyslexia, and he alleges that Palardy promised to allow an employee named Alice Gerbeck to assist him, but that Palardy ultimately did not allow it and told Sharp to submit his paperwork directly to Palardy. (*Id.* at 11-12, 15). Sharp also documents a series of run-ins with Palardy, including an incident in February 2010 when Palardy called Sharp at his home, ordered him to get his employees into work to shovel snow, and then called him back five minutes later and fired him. (*Id.* at 16; *see also id.* at 13-14, 18). Palardy's supervisor later called Sharp and told him he had not been fired, but no action was taken against Palardy for the incident. (*Id.*). Sharp avers repeatedly that various white employees were treated more favorably by Palardy than he was.

The incident central to his claim occurred in the summer of 2010. Palardy accused Sharp of "abusing [his] agency vehicle privileges by driving out to the Edgewood area for personal reasons." (*Id.* at 17). Sharp was forced to resign for the incident in lieu of termination on August 20, 2010. (*Id.*). An unemployment appeals decision from the Maryland Department of Labor, Licensing, and Regulation that Sharp has attached to his complaint details the incident. (*Id.* at 6-8). According to the decision, Sharp was forced to resign for driving to his daughter's house using an HABC  vehicle. (*Id.* at 6). The hearing examiner determined that Sharp was *not* terminated for misconduct because he was on call at the time he used the car to drive to his daughter's house, and that because HABC's policy on vehicle use while on call was unclear, Sharp did not violate the policy by using the car the way he did, as he could have had to respond directly to work from his daughter's house. (*See id.* at 7-8). Sharp alleges that Steven Weldon, a white HABC employee who was previously plant operations superintendent and who currently

holds that position again, used a company vehicle that was reported out of the work zone during work hours, that he had an accident with his company vehicle, and that he failed a drug test on the same day as the accident, but that he was not terminated, and was treated favorably by Palardy, despite these infractions. (*See id.* at 10; see also Compl., ECF No. 1, at 2-3). It appears that Weldon was demoted from the superintendent job, but he was apparently promoted to that position again after Sharp was forced to resign. Thus, Sharp alleges he was not provided with the same due process and leniency that Weldon was, and that he was instead forced out of his job for a lesser violation of HABC's policies.

Sharp subsequently exhausted his administrative remedies with the EEOC and received a right to sue letter on September 21, 2012. (*See* Compl. Exs. at 2-3).[2] Notably, the EEOC based its determination not to pursue Sharp's claim on the erroneous finding that he had the same supervisor during his entire sixteen year tenure with HABC. (*Id.* at 2). Sharp points out that his supervisor changed to Palardy in November 2008 when Palardy was hired at HABC and Sharp was promoted. (*Id.* at 5). Sharp filed suit shortly after receiving his right to sue letter.

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition

---

[2] It appears that Sharp brought both race discrimination and disability discrimination claims in his EEOC charge, but he appears to be only pressing his race discrimination claim in his complaint. The attachments to his complaint do mention instances where his claimed disability was noted by his supervisor or was not accommodated.

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Sharp's complaint plausibly contains all of the elements of a prima facie case of employment discrimination. "Title VII prohibits an employer from 'discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). 42 U.S.C.A. § 2000e–2(a). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* (citation omitted).

Here, Sharp has alleged that, as the "first black Plant Operations Superintend[ent,]" he is

a member of a protected class. (Compl. Exs. at 11). Sharp has also alleged he was a satisfactory employee, as he worked at HABC for sixteen years and was promoted multiple times during that tenure. (*Id.* at 5). HABC's decision to force Sharp to resign in 2010 was obviously an adverse employment action. Finally, Sharp has plausibly alleged that on multiple occasions he was disciplined more harshly than his similarly situated white peers, most relevantly with respect to the incident of unauthorized use of his HABC vehicle for which he was lost his job. According to Sharp, Steve Weldon, a white HABC employee who was and is in the same position Sharp was at HABC, was only demoted, and was certainly not forced to resign, for what, accepting the facts in the complaint as true, were much more egregious violations of HABC's policies, particularly in light of the Maryland unemployment appeals decision finding that Sharp's use of his vehicle was *not* misconduct or a violation of HABC policy. (*See id.* at 6-8, 10, 17; Compl. at 2-3). Steven Weldon appears to have been given his superintendent job back. Thus, Sharp has alleged that he was treated differently from and more harshly than a similarly situated white comparator. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) ("Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).[3] Accordingly, Sharp has stated a claim of disparate treatment under Title VII and HABC's motion to dismiss will be denied.

HABC's request for a more definite statement will also be denied without prejudice. Rule 12(e) "allows a defendant to move for a more definite statement if the complaint 'is so vague or

---

[3] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

ambiguous that he cannot reasonably be required to frame a responsive pleading.'" *Hodgson v. Virginia Baptists Hospital, Inc.*, 482 F.2d 821, 822-23 (4th Cir. 1973) (brackets omitted). "Where a party has enough information to frame an adequate answer, a court should deny the Rule 12(e) motion and avoid delay in maturing the case." *Doe v. Bayer Corp.*, 367 F. Supp. 2d 904, 917 (M.D.N.C. 2005). As the contours of Sharp's claim are clear, HABC is not entitled to a more definite statement. In light of Sharp's allegations, however, the court will grant his motion for appointment of counsel, and his appointed counsel may seek leave to amend the complaint to more clearly articulate his allegations.

August 27, 2013 _____/s/_____
      Date       Catherine C. Blake
      United States District Judge